THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **TITAN WRECKING & ENVIRONMENTAL, LLC,** | ) Case No. 1:15-cv-00577 <br> ) <br> ) Judge Susan J. Dlott |
| *Plaintiff,* | ) |
| vs. | ) |
| **VESTIGE REDEVELOPMENT GROUP LLC,** *et al.,* | ) <br> ) **PLAINTIFF'S BRIEF IN** <br> ) **OPPOSITION TO DEFENDANTS'** |
| *Defendants.* | ) **MOTION TO DISMISS** |

Plaintiff Titan Wrecking & Environmental, LLC ("Titan") hereby opposes Defendants Matthew R. Lafkas ("Lafkas"), Vestige Redevelopment Group LLC ("Vestige") and its members, Skinner Family II, LLC ("Skinner Family"), MRL Capital Holdings, LLC ("MRL Capital"), and Two Thirds, LLC's ("Two Thirds") (collectively, "Defendants") Motion to Dismiss or Stay (the "Motion"). Because Defendants' Motion is wholly unsupported by law and based upon a misrepresentation of the facts, it should be denied. Contrary to Defendants' claim, *Colorado River* abstention is neither necessary nor appropriate in this case.

Defendants' position that Hamilton County Court of Common Pleas Case No. 1400996 (the "State Court Action") is the appropriate venue for this action is incorrect and disingenuous. In fact, Titan previously moved the State Court for leave to assert its fraudulent transfer and declaratory judgment claims (the same claims before this Court) in that case. Vestige *opposed* Titan's efforts as untimely and prejudicial. In response, the State Court denied Titan's motion for leave to amend, concluding the request was untimely[1] and the new claims "fundamentally

---

[1] Titan asserts that its motion for leave was timely. Titan obtained the initial information substantiating its fraudulent transfer claim in the litigation discovery. Vestige roadblocked Titan's efforts to obtain further information, leaving Titan to analyze the merits of its claims with nominal information. In light of this, six months

00171468-1

chang[ed] the nature" of the State Court Action. Defendants' failure to acknowledge this fact to the Court renders their Motion suspect and their accusations of "forum shopping" nothing short of preposterous.

Defendants' current position that the State Court is the proper venue can only be characterized as a remarkable change of heart or a thinly-veiled attempt to deprive Titan of any forum in which to litigate its fraudulent transfer claim. Defendants, however, are not entitled to use the State Court Action as both a sword and a shield. Thus, in light of (1) Vestige's own conduct in the State Court Action, (2) the State Court's express determination that Titan's amended claims would "fundamentally change" the State Court Action, and (3) Defendants' failure to satisfy the elements of the *Colorado River* Abstention Doctrine, Defendants' Motion should be denied.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

In February 2014, Titan filed a lawsuit against Vestige for breach of contract, unjust enrichment and to foreclose its mechanic's lien against the Kahn's/ Sara Lee Building Demolition Project located at 3241 Spring Grove Avenue, Cincinnati, Ohio (the "Property") (the "Project) in the State Court Action. *See* Complaint, attached as Exhibit 1 to Declaration of Steven Coffaro [Doc. No. 8] (the "Coffaro Dec."). Vestige owns the Project. *Id., see also* Vestige's Answer and Counterclaim, attached as Coffaro Dec. Exhibit 2. Titan was a prime contractor on the Project. *Id.* To date, Vestige owes Titan an outstanding balance in excess of $885,584.55 for Titan's Project work. *See* Complaint. Vestige is a limited liability company with a single asset – the real property where the Project was performed that is the subject of

---

is not an unreasonable amount of time to expend before moving to amend a complaint, especially given the limited discovery taken in the State Court Action.

Titan's lien. The value of the property and the sufficiency of any proceeds in a sheriff's sale to pay Titan's damages are unknown and uncertain.

Information obtained from discovery conducted during the State Court Action reveals that Vestige financed the Project, in part, through a $480,000 loan on the Project property with Commerce Bank. *See* Vestige 30(B)(5) Deposition Transcript (the "Vestige Depo.") at p. 21-22, attached as Coffaro Doc. Exhibit 4.[2] Vestige also financed the Project with grants from the State of Ohio's Department of Development and the City of Cincinnati. *Id.* at p. 37.

The Project work included the demolition and salvaging of the Project scrap. In late fall 2011 / early winter 2012, Vestige received significant revenue for Project scrap from Cohen Brothers, Inc. ("Cohen"). *Id.* at 42, 56, 198. Titan furnished the labor, materials and equipment to demolish, segregate and stockpile materials that were to be salvaged and sold as scrap by Vestige. *Id.* at 42. Titan was aware of the volume and value of these materials based on its past experience in performing demolition services and salvaging similar materials for sale. Based on its knowledge of the value of these materials, Titan estimated the scrap revenue to be equal to or in excess of at least $1 million to $2 million.

Titan reasonably expected that these revenues would be used to pay for any additional costs incurred to perform the Project work, including the import of replacement backfill at the agreed unit price set forth in the Contract. In proceeding with the work set forth in Change Order #2, and the import of replacement backfill as authorized by Vestige, Titan reasonably relied upon its knowledge of the value of the scrap materials and reasonably expected that such funds would be used to pay for the additional costs due and owing to Titan for the import of replacement backfill at the agreed unit price.

---

[2] The complete transcript of the Vestige Deposition is being filed simultaneously with this Opposition in accordance with Judge Dlott's Standing Order on Civil Procedures.

Vestige testified that it used a portion of the Cohen scrap[3] proceeds to satisfy the Commerce Bank loan in January 2012. *Id.* at 30, 33, 42. Vestige also testified that in September 2012, profit distributions were made to its members from the Cohen scrap proceeds. *Id.* at 202-203. Thus, Vestige generated significant revenue from the salvage of Project scrap materials that were part of Titan's work and then used those funds to (i) prematurely satisfy the Commerce Bank mortgage; (ii) issue capital returns to its members; (iii) distribute profits to its members; (iv) reduce the amount of Project grant funds from which Vestige paid, or could pay, Titan; and/or (v) otherwise put the monies outside of the reach of Titan.

Information obtained during discovery in the State Court proceeding confirms Vestige is 25% owned by Skinner Family; 25% owned by MRL Capital; and 50% owned by Two Thirds, LLC (50%). *Id.* at 12-13. Lafkas, his parents, and his siblings are the members of Skinner Family. *Id.* Lafkas is the sole member of MRL Capital and the general partner and manager of Vestige. *Id.* Lafkas was the primary individual involved in Project development and funding on behalf of Vestige, was the only individual with day-to-day involvement in the Project. *Id.* The Project involvement of the remaining Vestige partners does not go beyond updates prepared or provided by Lafkas. *Id.* at 21, 197-203.

Thus, since filing the complaint in the State Court Action, Titan discovered information not previously known which support a fraudulent transfer claim against Lafkas, Vestige and its members (Skinner Family, MRL Capital and Two Thirds), and veil piercing / alter ego liability against Lafkas. Accordingly, on June 4, 2015, Titan moved for leave to file its First Amended

---

[3] Vestige refused, at deposition and in response to written discovery requests, to disclose the amount of revenue it received from Cohen for the Project scrap. *See, e.g.,* Vestige Depo. at 30, 198-199. On 12/4/14, Vestige also moved for a protective order relative to Titan's subpoena to Cohen for this information, which Titan opposed. *See* State Court docket, attached as Exhibit A to the Declaration of Melissa A. Jones, which is being filed simultaneously herewith (the "Jones Dec."). The Magistrate's Decision granting Vestige's motion for protective order is currently before Judge Myers upon Titan's objection. *See* Jones Dec. Ex. A, State Court's 4/29/15 Entry Holding Motion In Abeyance.

Complaint to include the fraudulent transfer claim against Defendants (the "Motion for Leave to Amend"). *See* Coffaro Dec. Exhibit 4.

Notably, Defendants completely fail to mention that Vestige opposed Titan's Motion for Leave to Amend in the State Court Action. Neither Defendants' Motion, nor the Coffaro Declaration, make mention of Vestige's opposition, nor does the Coffaro Declaration attach a copy of Vestige's opposition brief. A copy of Vestige's opposition to Titan's Motion for Leave to Amend is attached as Exhibit B to the Jones Dec.

In its opposition, Vestige objected to Titan's motion as untimely and prejudicial, without offering any admissible evidence justifying its position. Vestige also attacked the substantive merits of Titan's claim, thereby attempting to convert its opposition to Titan's Motion for Leave into a premature motion to dismiss the proposed amended complaint. The State Court summarily denied Titan's Motion for Leave to Amend on two grounds: 1. the motion was allegedly untimely; and 2. in the eyes of the Magistrate, the claims to be added were so different that adding them would "fundamentally change the nature" of the State Court Action. *See* Coffaro Dec. Exhibits 5-6. The Magistrate did not address the substantive merits of Titan's amended claims.

On September 8, 2015, Titan filed the instant lawsuit seeking damages and remedies for Defendants' fraudulent transfers pursuant to ORC §1336.01 *et seq.*, and a declaratory judgment regarding Titan's rights thereto. [Doc. No. 1]. Unbelievably, Defendants now attempt to dismiss or stay this action by advocating that the State Court is the proper venue for Titan's fraudulent transfer claim. Given Vestige's directly contrary position to the State Court just a few months ago, Defendants' Motion is duplicitous. Furthermore, Defendants' reliance upon the Colorado River Abstention Doctrine is misplaced.

## II. LAW AND ARGUMENT

Pursuant to settled law, abstention is an extraordinary doctrine, justified in only the narrowest of circumstances, none of which are present in this case. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236 (1976). Under *Colorado River*, a federal court may, in *"exceptional circumstances,"* abstain from exercising jurisdiction when there are concurrent state and federal proceedings. *Id.* (emphasis added.) When applying the doctrine, the court's task "is not to find some substantial reason for the exercise of federal jurisdiction . . .; rather, the task is to ascertain whether there exist exceptional circumstances . . . to justify the surrender of [federal court] jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26, 103 S. Ct. 927 (1983)(internal quotation marks omitted). "[A] district court's discretion to abstain must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Village of Westfield v. Welch's*, 170 F.3d 116, 125 (2d Cir. 1999)(internal citations omitted). The Supreme Court itself has stated that federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Colorado River*, 424 U.S. 800 at 817.

### A. Colorado River Abstention Is Neither Applicable Nor Warranted Here.

1. Vestige's Own Actions in the State Court Action Defeat The Motion.

The purpose of the *Colorado River* doctrine is to remove a case to a more convenient forum in which the claim is already pending. *Healthcare Capital, LLC v. Healthmed, Inc.*, 213 F. Supp. 2d 850 (S.D. Ohio 2002), citing *Colorado River*, 424 U.S. 800, 818-819. Here, there is no other "more convenient forum." Titan's fraudulent transfer claim is not "already pending" in another forum. The State Court declined to accept jurisdiction over Titan's fraudulent transfer

claim. The State Court Magistrate expressly determined that Titan's fraudulent transfer claim would "fundamentally" change the nature of the State Court Action.

Vestige vehemently opposed Titan's efforts to amend its complaint to include the claim. Accordingly, Defendants should be estopped from now claiming the State Court is the more appropriate venue. *See Wimmer v. Gateway Funding Diversified Mortg. Servs., L.P.*, 2015 U.S. Dist. LEXIS 124277 (S.D. Ohio, J. Dlott)[4] (motion to dismiss denied, because the state court stayed the case under defendant's advisement that it intended to remove the case to federal court for consolidation, and "[defendant] cannot sway the trial court to stay the case pending the federal court case, then move to dismiss the federal court case."). *See also Tucker v. Casual Male Retail Group, Inc.*, 2004 U.S. Dist. LEXIS 17822 (N.D. Cal. Aug. 30, 2004) (declining to abstain under *Colorado River* where plaintiff filed federal suit after state court denied motion to amend complaint to add a different, albeit related, cause of action based on same operative facts because (1) the federal action did not evince any special concerns regarding piecemeal litigation; (2) the federal action involved ordinary employment, contract, and labor law issues; (3) there was no vastly more comprehensive state action pending; (4) the state court proceeding had not progressed significantly; and (4) the record did not indicate that the employee filed the federal action in bad faith in an attempt to forum shop).

Here, Vestige's own conduct in opposing Titan's motion to amend the state court complaint, which effectuated the Magistrate's order denying Titan's motion for leave, renders Titan without a forum for its fraudulent transfer claim other than this Court. "An important consideration under a *Colorado River* analysis is whether, in the case of stay or dismissal, the state court proceedings will be an adequate forum for Plaintiffs' claims. Stay or abstention is inappropriate where 'substantial room for doubt' exists as to whether the state court can provide

---

[4] All unreported cases are attached hereto at Exhibit A.

relief." *Oglesby v. County of Kern*, 2005 U.S. Dist. LEXIS 29363 (E.D. Cal. Nov. 4, 2005) (*quoting Moses H. Cone,* 460 U.S. 1, 26-27). As Vestige's own actions barred Titan's fraudulent transfer claim in the State Court Action, Defendants' Motion should be denied.

2. This Lawsuit and the State Court Action Are Not Parallel.

When determining a *Colorado River* stay, the court must (1) first establish whether the state and federal court suits are parallel, and then (2) analyze a number of factors outlined in *Colorado River* and its progeny. *Madoffe v. Safelite Solutions, LLC*, 2007 U.S. Dist. LEXIS 9584 (S.D. Ohio 2007). "If the actions are not parallel, then the Court's analysis must end, as the district court would have nothing in favor of which to abstain." *Healthcare Capital*, 213 F. Supp. 2d at 857 (internal citations omitted).

"For an action to be parallel, there must be identity of the parties and issues in the federal and state court actions." *Healthcare Capital*, 213 F. Supp. 2d at 858. While the Sixth Circuit recognizes that two actions may be parallel even if one action includes an additional claim, "essential to the determination of whether the two actions are parallel is whether resolution of the state court action will provide complete relief for the federal action." *Heitmanis v. Austin*, 899 F. 2d 521, 528 (6th Cir. 1990) (finding that the district court should not have abstained when additional issues not addressed by the state litigation were raised in the federal complaint); *see also Madoffe*, 2007 U.S. Dist. LEXIS 9584 at *7.

The *Madoffe* opinion is instructive. In *Madoffe*, the state and federal court lawsuits involved the same parties, and each claim arose out of the same occurrence: plaintiff's employment and separation from defendant. Both complaints contained sex discrimination allegations, with plaintiff's federal complaint including two additional claims for defendant's alleged FMLA violations. The Southern District of Ohio denied defendants' motion to dismiss,

finding the two claims not parallel because (1) additional determinations needed to be made in the federal court action, and (2) the state court could not dispose of plaintiff's claims in the federal case because plaintiff could not vindicate her FMLA rights in the state court.

In this case, Titan's federal and state court complaint do not include identical claims, only one party is the same (Vestige). Additionally, the State Court Magistrate already ruled that the claims and parties are so distinct that Titan's fraudulent transfer claim would fundamentally change the State Court Action. *See also Heitmanis v. Austin*, 899 F.2d 521 (because plaintiff's federal court case included three additional claims premised upon state election statutes, it was not parallel to the state court action, because while both cases arose from the same set of laws and circumstances, the three additional state statutes raised in the federal court complaint were "far more intrusive in terms of [Republican] party governance"); and *The Union Central Life Insurance Co. v. Andraos Capital Mgmt. & Ins. Svs., Inc.*, 2010 U.S. Dist. LEXIS 129511 (S.D. Ohio 2010) (a pending California arbitration and Ohio federal court lawsuit were not parallel despite both being premised upon the parties' financial dealings, because while the arbitration involved claims of wrongful discharge, breach of fiduciary duty, unfair business practices, and other claims arising from the parties' employment and/or insurance broker relationship, only the issue of whether defendant defaulted on two promissory notes is before the federal court).

*Madoffe, Heitmanis* and *Andraos* confirm the State Court Action and this lawsuit are not parallel. While both actions arise from the Project, this lawsuit is premised entirely upon Ohio's fraudulent transfer statute, ORC §1336.01 *et seq*. The State Court Action does not include Titan's ORC §1336.01 claim. Indeed, the State Court refused to entertain the fraudulent transfer claim, on the State Court's opinion that Titan's amended complaint would fundamentally change the nature of the State Court Action.

Furthermore, Titan's fraudulent transfer claim includes a wholly different set of elements than its breach of contract, unjust enrichment and mechanic's lien foreclosure claims in State Court Action. The claim here includes different claims and defendants who are not parties to the State Court Action. Discovery efforts will obtain information that is different information than the State Court Action; indeed the State Court granted Vestige's request to not produce some of that information. The remedy here is entirely different than the remedy sought in the State Court Action: the State Court Actions seeks foreclosure of a mechanic's lien against real property improved by Titan, whereas this action seeks monetary damages, the return of fraudulently transferred proceeds, veil piercing remedies pursuant to ORC §1336.07 and supporting case law, punitive damages and legal fees.

While the Sixth Circuit is silent as to the specific issue of whether a fraudulent transfer claim is separate and distinct claim, at least one other circuit clearly articulates that a fraudulent conveyance claim premised upon state statute is a separate claim which federal courts routinely hear, and, as a result, the *Colorado River* analysis is not applicable. *Jackson-Platts v. GE Capital Corp.*, 727 F.3d 1127, 1137 (11th Cir. 2013) (motion to dismiss denied because a fraudulent transfer claim is an independent claim because it involves different elements, different remedies and a different set of acts than a breach of contract claim, and "the statue imposes liability based on factors wholly unrelated to the underlying tort action."); *see also SE Prop. Holdings, LLC v. Center*, 2015 U.S. Dist. LEXIS 129053 (S.D. Alabama); *Lancer Offshore Inc. v. Citco Group Ltd.*, 2011 U.S. Dist. LEXIS 34255 (S.D. Florida); and *C&M Inv. Group, Ltd. v. Campbell*, 2010 U.S. Dist. LEXIS 116638 (M.D. Florida).

Moreover, contrary to Defendants' argument, the State Court's determination that Vestige owes money to Titan is not necessary for Titan to proceed on its fraudulent transfer

claim. ORC §1336.04 provides that a transfer is fraudulent as to a creditor, whether the claim arose before, or within a reasonable time, the transfer was made. ORC §1336.01 defines creditor as "a person who has a claim." Further, under the Uniform and Ohio Fraudulent Transfer Act, "a debtor may make a fraudulent transfer in anticipation of a claim. Litigation resulting in a judgment and creating a debtor-creditor relationship is not res judicata as to a subsequent claim that the debtor fraudulently transferred property to avoid paying the judgment." *Blood v. Nofzinger*, 2005-Ohio-3859, 162 Ohio App. 3d 545, 834 N.E.2d 358 (Huron Cty. App. 2005)(the Uniform Fraudulent Transfer Act and ORC §1336.01 *et seq.* no longer require that an allegedly fraudulent transfer occur subsequent to the creation of a debtor/creditor relationship; it permits claims for transfers made with the intent to defraud future creditors. The plain language of ORC §1336.04 defines the set of fraudulent transfers as inclusive of transfers occurring before or after the transfer was made or the obligation incurred).

By opposing Titan's effort to add the claim in the State Court Action, Vestige implicitly conceded the actions are not parallel. Again, the State Court Magistrate confirmed the actions are not parallel. Thus, the mere fact that Titan could have appealed the Magistrate's Decision (which is Titan is not obligated or required to do) does not change the fact that the Titan's fraudulent transfer claim is not currently pending before the State Court. The State Court proceeding consists of Titan's claims for breach of contract and unjust enrichment claims against Vestige; Titan's mechanic's lien foreclosure of real property improved by Titan and owned by Vestige; and Vestige's slander of title counterclaim. Titan attempted to bring its fraudulent transfer claim in the State Court Action, but its efforts were thwarted, at Defendants' request. Accordingly, the two cases are not parallel. Defendants' Motion should be denied.

### 3. The *Colorado River* Factors Are Not Satisfied Here.

If this Court determines the State Court Action and this lawsuit are somehow parallel, it must next analyze the *Colorado River* factors to determine whether abstention is appropriate. *Madoffe v. Safelite Solutions, LLC*, 2007 U.S. Dist. LEXIS 9584 (S.D. Ohio 2007). In the Sixth Circuit, these factors include (1) whether federal or state law provides the basis for decision of the case; (2) whether either court has assumed jurisdiction over any *res* or property; (3) whether the federal forum is less convenient to the parties; and (4) the order in which jurisdiction was obtained; (5) whether abstention avoids piecemeal litigation; (6) can the state court adequately protect the plaintiff's rights; (7) the relative progress of the proceedings; and (8) do the state and federal courts have concurrent jurisdiction over Titan's claims. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206-207 (6th Cir.), citing *Romine v. Mitelman*, 160 F.3d 337, 340-41 (6th Cir.).

These factors "are to be carefully weighed and balanced against each other rather than viewed as a mechanical checklist." *Colorado River*, 424 U.S. 800 at 818. Specifically, the Court is to consider "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. Only the clearest of justifications will warrant dismissal." *Id.*, at 818-19.

Here, an analysis of the eight factors identified by the 6th Circuit, and this District Court, clearly demonstrate that abstention is inappropriate and unwarranted.

### (a) The State Court Did Not Assume Jurisdiction Over the Res or Property.

Contrary to Defendants' mischaracterization of the *res*, the property at issue here are certain proceeds which Vestige fraudulently transferred to its members. Conversely, the property at issue in the State Court is the real property that is the subject of Titan's mechanic's lien.

Furthermore, the State Court explicitly refused to assume jurisdiction over the fraudulent transfer claim, and the property at issue in the claim. Thus, this factor clearly weighs against abstention. *See Red Roof Inns, Inc. v. A.C. Furniture Co., Inc.*, 2012 U.S. Dist. LEXIS 24321 (S.D. Ohio)(federal jurisdiction is supported because the state court did not assume jurisdiction over any res or property). *See also Lech v. Third Federal Savings and Loan Association of Cleveland*, 2013 U.S. Dist LEXIS 180626 (S.D. Ohio) (the federal court did not assume jurisdiction over the property at issue in the state court (the real property subject to a mortgage lien foreclosure claim), but instead assumed jurisdiction over different property (money, pursuant to plaintiff's purely monetary damages claims), this factor weighed against abstention).

(b) <u>The Federal and State Forum are Equally Convenient.</u>

This Court is neither less nor more convenient than the State Court. Both courts are located in Cincinnati, Ohio, and all defendants are located in Cincinnati, Ohio. Accordingly, this factor weighs against abstention. *See Red Roof, supra* (convenience, which relates to geographical considerations, favors jurisdiction; however, if this factor does not favor either forum, the finding weighs against abstention).

(c) <u>Accepting Jurisdiction Does Not Create Piecemeal Litigation.</u>

Accepting jurisdiction will not create piecemeal litigation here. "Piecemeal litigation occurs when different courts adjudicate the same issue, thereby duplicating judicial efforts and potentially rendering conflicting results." *Romine*, 160 F.3d at 341. As discussed above, and as confirmed by the State Court Magistrate, Titan's fraudulent transfer claim is an entirely separate and distinct claim, with different parties, elements, discovery and damages than Titan's State Court Action; the mere fact both claims arise from the same construction project does not automatically create "piecemeal litigation." *See Madoffe*, 2007 U.S. Dist. LEXIS 9584 at *9

("[a]s for the avoidance of piecemeal litigation, every situation involving parallel state and federal litigation is piecemeal by definition")(internal citations omitted)); *see also Pritchard v. Dent Wizard Int'l Corp.*, 275 F. Supp. 2d 903, 912 (S.D. Ohio 2003)(piecemeal litigation is not at issue when the state court case was dismissed on improper venue and pending on appeal because the state court has not decided any substantive issues).

Piecemeal litigation is typically found when <u>identical claims</u> are pending in the state court, or when several cases on the same issues are pending in several different courts. *See Healthcare Capital*, 213 F. Supp. 2d 850 (four nearly identical cases already pending in three state courts); *Red Roof*, 2012 U.S. Dist. LEXIS 24321(the state court and the federal court lawsuits contained identical claims); and *Emerald Logistics, Inc. v. Crutcher*, 2008 U.S. Dist. LEXIS 64898 (S.D. Ohio) (the state and federal court actions were "virtually identical."). There is simply no risk of piecemeal litigation here. Accordingly, this factor also weighs against abstention.

### (d) Whether This Court Obtained Jurisdiction on the Property at Issue in the State Court Action.

The Ohio state court undisputedly obtained jurisdiction over Titan's breach of contract, unjust enrichment and mechanic's lien foreclosure claim, and the real property subject to that claim. However, the State Court refused to accept jurisdiction over Titan's fraudulent transfer claim, and the property at issue in this lawsuit. This factor also weighs against abstention.

In this vein, Defendants' "forum shopping" accusations are untrue and disingenuous. Vestige's own actions forced Titan's lawsuit in this Court. The State Court rendered its decision entirely upon Ohio Civil Rule 15, and never addressed the substantive merits of Titan's claim. In light of these facts, Defendants' accusations are troubling. *See IBEW v. Local Union No. 2020 v. AT&T Network Sys.*, 879 F.2d 864 (6th Cir. 1989) (if AT&T was genuinely concerned about

piecemeal litigation, it should not have acted as it did); *see also PaineWebber,* 276 F.3d 197, 203-204 (defendant's forum shopping accusations conveniently ignores its own motivations, and are thus not persuasive).

Indeed, the alternative options available to Titan are highly inefficient. Titan could have appealed the State Court magistrate to the judge, but it was not required to do so. Even if it did, and it obtained an unfavorable result, it would be required to litigate the State Court Action to final judgment before it could appeal to the Ohio appellate court. This option requires significant client and judicial resources, all while Vestige's members put the proceeds further out of Titan's reach. This result is inequitable and prejudicial to Titan.

(e) While State Law is the Governing Law, Federal Courts Routinely Hear Fraudulent Transfer Claims Premised upon State Law.

The source of governing law on Titan's fraudulent transfer claim is state law at ORC §1336.01 *et seq*. However, the Sixth Circuit and this court routinely hear fraudulent transfer cases premised upon ORC §1336.01, just as federal courts throughout all districts and circuits do. Thus, this factor is a non-issue, and weighs against abstention. Moreover, Vestige's objection to Titan's attempt to bring this claim in the State Court Action, and the State Court's agreement to not hear the claim, undermines any reliance upon this factor in favor of abstention.

(f) The State Court Cannot Adequately Protect Titan's Rights.

The State Court cannot adequately protect Titan's rights under ORC §1336.01 *et seq*. because the State Court refused to accept the claim. Titan is effectively left without recourse if it is forced to wait for the State Court Action to be tried and/or appealed. Indeed, should this Court decline jurisdiction, Titan is robbed of its right to litigate its fraudulent transfer claim on its substantive merits, irrespective of the fact Titan brought the claim well within four years provided by ORC §1336.04. Accordingly, this factor weighs heavily against abstention. *See*

*also Heitmanis,* 899 F. 2d 521 at 528 (due to the additional issues raised in the federal complaint and the failure of the state court to adequately address those issues, *Colorado River* abstention was inappropriate).

### (g) Progress of the Proceedings is Minimal.

Titan filed the State Court Action in February 2014. However, no case schedule or trial date has yet been set. Titan and Vestige exchanged written discovery, and Titan deposed the corporate representative of Vestige. However, all efforts by Titan to obtain further discovery on Titan's fraudulent transfer claim have been blocked by Vestige, and have been pending before the State Court since February 2015. *See* Jones Dec. Ex. A, Titan's 2/13/15 Objections to the Magistrate's Decision. Because nominal progress has been made in the State Court, this factor also weighs against abstention.

### (h) The State and Federal Court Do Not Have Concurrent Jurisdiction over Titan's Fraudulent Transfer Claim.

As discussed above, the State Court does not have jurisdiction over the property at issue in this lawsuit. Accordingly, it cannot be argued that the State Court has concurrent jurisdiction over the claim. This factor, as all other seven factors, weighs against abstention.

## B. Because Titan Requests Money Damages, Dismissal is Prohibited.

Even if the Court concludes that abstention is warranted, despite the overwhelming evidence above, this suit may not be dismissed. Federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731, 116 S. Ct. 1712 (1996). In contrast, where the plaintiff seeks monetary damages, at most, the case should be stayed rather than dismissed without prejudice. *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010) ("[i]n the context of a complaint seeking 'both equitable [relief] and money damages,' as in this

case, 'a federal court's discretion to abstain from exercising jurisdiction does not extend so far as to permit a court to dismiss or remand, as opposed to stay, an action at law.'"). *See also Woody's Rest., LLC v. Travelers Cas. Ins. Co.*, 980 F. Supp. 2d 785, 786 (E.D. Ky. 2013) (holding where plaintiffs request monetary damages, a court may not dismiss or remand – it is only permitted to stay the action under the *Colorado River* abstention doctrine). Titan's Complaint in this case includes relief for monetary damages. Thus, a dismissal is prohibited.

Additionally, the overwhelming majority of Sixth Circuit opinions resoundingly state that a stay, rather than a dismissal, is the appropriate remedy. *See Emerald Logistics, Inc.*, 2008 U.S. Dist. 64989 at *16 (6th Cir. 2004)( "having found that abstention is appropriate, the Court will stay rather than dismiss the case"); *Bates v. Van Buren Twp.*, 122 Fed. Appx. 803, 808 (6th Cir. 2004) ("abstention under *Colorado River* would generally require a stay of proceedings rather than dismissal."); *Holmes Fin. Assoc, Inc. v. Resolution Trust Corp.*, 33 F.3d 561, 562 (6th Cir. 1994)("[a] stay lessens concerns over the statute of limitations . . .and generally protects all the rights of the parties without imposing any additional burden on the district court; *Blake v. Wells Fargo Bank, NA*, 917 F. Supp. 2d 732 (S.D. Ohio 2013) ("[u]nder Sixth Circuit precedent, *Colorado River* abstention requires a district court to stay, not dismiss, an action pending the outcome of the parallel state case.").

However, because Defendants have (1) failed to prove the existence of parallel actions, and (2) failed to satisfy the seven *Colorado River* factors, abstention is not appropriate here. Accordingly, the Court should retain jurisdiction over this matter.

### C. The *Landis* Abstention Doctrine is Inapplicable and Irrelevant.

Despite not satisfying one single element to warrant abstention under *Colorado River*, Defendants request this Court to simply dismiss the case, pursuant to its authority under *Landis*

*v. North American Co.*, 299 U.S. 248 (1936). However, the *Landis* holding, which pre-dates *Colorado River* by 40 years, discussed dismissal of a case when two pending federal court cases contained identical claims. Furthermore, even *Landis* provides a threshold for dismissal, which should only be effected upon "carefully considered judgment." *Ohio Midland, Inc. v. Proctor*, 2007 U.S. Dist. LEXIS 25306 (S.D. Ohio 2007) at *24 (granting a motion to dismiss where, unlike here, the plaintiff included identical claims in a state court proceeding).

The 6th Circuit determined that under *Landis,* the "most important consideration is the balance of hardship; the moving party has the burden of proving that it will suffer irreparable injury if the case moves forward, and that the non-moving party will not be injured by a stay." *IBEW, Local Union No. 2020,* 879 F.2d 864. However, when an alleged hardship is created by the moving party's own actions, dismissal is not warranted. *Id.*

Like AT&T in the *Local Union No. 2020* case, if Defendants complain of hardship and inconsistent opinions, they should not have opposed Titan's effort to include its fraudulent transfer claim in the State Court Action. Thus, their own actions, the State Court's admission that Titan's fraudulent transfer claim is fundamentally different than the State Court Action, and the complete lack of any reasons supporting a dismissal or stay of this case defeats Defendants' Motion.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Titan respectfully requests that this Court deny Defendants' Motion and retain jurisdiction over this case.

Respectfully submitted,

*/s/ Melissa A. Jones*
Ian H. Frank (0066638)
*ifrank@frantzward.com*
Melissa A. Jones (0074967)
*mjones@frantzward.com*
**FRANTZ WARD LLP**
200 Public Square, Suite 3000
Cleveland, Ohio 44114
(216) 515-1660
(216) 515-1650 (fax)

*Attorneys for Plaintiff*
*Titan Wrecking & Environmental, LLC*

# CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing Brief in Opposition to Motion to Dismiss was served via electronic mail upon the following this 13th day of November, 2015:

Steven Coffaro, Esq.
Keating Muething & Klekamp
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
steve.coffaro@kmklaw.com

*Attorney for Defendants*

/s/ Melissa A. Jones
*Attorney for Plaintiff*

00171468-1