

# TRACY WINKLER
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

**ELECTRONICALLY FILED**
**June 19, 2015 03:47 PM**
**TRACY WINKLER**
**Clerk of Courts**
**Hamilton County, Ohio**
**CONFIRMATION 419743**

| | |
|---|---|
| **TITAN WRECKING AND ENVIROMENTAL LLC** | **A 1400996** |
| **vs.** | |
| **VESTIGE REDEVELOPMENT GROUP LLC** | **JUDGE BETH A MYERS** |

**FILING TYPE: MEMORANDUM**

**PAGES FILED: 12**

BFR200

EXHIBIT B



CHECKED
BY DOCKET
JUN 23 2015
M. LEBRON

Steven C. Coffaro (0065116)
Attorney for Defendant,
Vestige Redevelopment Group LLC

## COURT OF COMMON PLEAS

## HAMILTON COUNTY, OHIO

| | |
|---|---|
| TITAN WRECKING & ENVIRONMENTAL, LLC | ) ) ) Case No. A1400996 |
| Plaintiff, | ) ) (Judge Beth A. Myers) ) (Magistrate Michael Bachman) |
| vs. | ) ) ) |
| VESTIGE REDEVELOPMENT GROUP LLC | ) ) ) |
| Defendant. | ) |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT *INSTANTER*

Plaintiff, Titan Wrecking & Environmental, LLC ("Plaintiff" or "Titan"), is making a transparent attempt to circumvent this Court's discovery Order. On January 30, 2015, the Magistrate issued a Decision that, among other things, granted a protective order with respect to Titan's request for documents and information about funds received by Defendant Vestige Redevelopment Group LLC ("Vestige") from the sale by Cohen Brothers, Inc. of scrap from the subject project. The Magistrate determined that this information was not relevant to Titan's claims and was not discoverable.

Titan initially filed objections to the Magistrate's Decision, but then withdrew the objections. *See Plaintiff's Partial Withdrawal of Objections to the Magistrate's Decision*, filed herein on April 28, 2015. Now, four months after the Magistrate issued his Decision, and sixteen months after filing its original Complaint, Titan seeks leave of Court to file an Amended

Complaint asserting a baseless claim of "fraudulent transfer/veil piercing," with respect to Vestige's use of the funds paid by Cohen Brothers, Inc. If this motion is granted, the obvious next step that Titan will take is to ask this Court to reconsider its January 30, 2015 Decision and to compel production of the Cohen Brothers documents. It is abundantly clear that this (and not any belief that Vestige is not solvent or able to satisfy a judgment) is the real motivation behind Titan's motion for leave to amend and to add four new parties to this contract dispute.

Titan's motion has been filed in bad faith, and the claims that it seeks to assert have no factual or legal support whatsoever. The proposed amendment would be futile and the proposed new claims would immediately be subject to dismissal pursuant to Rule 12(B)(6). The Court should exercise its considerable discretion and deny Titan's motion.

## I.  BACKGROUND

This lawsuit arises from work performed by Titan at property owned by Vestige. Titan was awarded the project on a competitive bid, and entered into a contract with Vestige dated October 25, 2011 (the "Contract").[1]  Titan began performing in late 2011, and completed its work on August 3, 2012. (*See* Complaint, ¶ 32).

Titan was paid approximately $2.7 million for its services. On October 4, 2012, however, Titan recorded a mechanic's lien against the Vestige property in the amount of $1,355,457.76. (Complaint, Exhibit B). On December 31, 2013, Titan recorded a sworn partial release of its mechanic's lien and reduced the amount claimed to $536,324.55, based upon scheduled payments made by Vestige after October 2012. (Complaint, ¶ 35 and Exhibit D). Vestige disputes Titan's claims and contends that Titan has been paid in full for all work done on the project.

---

[1]  The Contract is attached, in part, as Exhibit A to Titan's Complaint filed on February 20, 2014.

2

Fifty-one days later, on February 20, 2014 Titan filed its Complaint in this matter to foreclose its lien, and increased the amount of its alleged claim from $536,324.55 to "in excess of $885,584.55." (Complaint, ¶¶ 12, 14, 18, 22 and 43).

On January 30, 2015, this Court issued a Magistrate's Decision granting a protective order with respect to Titan's request for documents and information about funds received by Vestige from the sale by Cohen Brothers, Inc. of scrap from the subject project. The Magistrate determined that this information was not relevant to Titan's claims and was not discoverable. Titan initially filed objections to the Magistrate's Decision, but then withdrew the objections.

On June 4, 2015, Titan decided to take an alternative path to obtain the Cohen Brothers documents, and moved this Court for leave to amend its Complaint. The motion was purportedly based upon the December 8, 2014 deposition testimony of Matthew Lafkas, principal of Vestige, pursuant to Civil Rule 30(B)(5). Titan seeks to add four new defendants to the litigation and to assert a new claim entitled, "Fraudulent Transfer/Veil Piercing." (*First Amended Complaint*, Count IV).[2] The entire purported basis for this new claim is testimony by Mr. Lafkas that: (1) Vestige paid off a mortgage loan in January 2012 and thereby obtained the release of the mortgage lien held on the property by Commerce Bank; and (2) in September 2012, Vestige made a return of capital and a distribution of profits to its members/owners.

These alleged facts, even if assumed to be true, are insufficient as a matter of law to establish the proposed new claim that Titan seeks to assert. The filing of its proposed First Amended Complaint would therefore be futile, and the Court should exercise its sound discretion to deny Titan's motion for leave.

---

[2] The proposed First Amended Complaint is attached as <u>Exhibit B</u> to Titan's motion for leave.

3

## II.    STANDARD OF REVIEW

Civil Rule 15(A) favors a liberal amendment policy.  However, a motion for leave to amend must be timely filed, and a Rule 15(A) motion should not "be granted [in cases of] bad faith, undue delay or undue. *Easterling v. Am. Olean Tile Co., Inc.,* 75 Ohio App. 3d 846, 850-51, 600 N.E.2d 1088 (4th Dist. 1991) ("there is a certain stage in litigation beyond which it becomes increasingly difficult to find an abuse of discretion in the denial of a motion to amend"); *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 16 (motion for leave to amend is properly denied in cases of bad faith, undue delay or undue prejudice).

Moreover, "where a plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." *Demmings v. Cuyahoga County,* 8th Dist. Cuyahoga No. 98958, 2013-Ohio-499, ¶ 9 (quoting *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.,* 60 Ohio St.3d 120, 123, 573 N.E.2d 622 (1991).  Thus, "[w]here an amendment to the complaint would be futile, the trial court does not abuse its discretion in denying the motion." *Demmings,* 2013-Ohio-499, ¶ 9. Plaintiff must present evidence to support the desired claims and the claims must not be prejudicial to the Defendant. *Easterling,* 75 Ohio App. 3d 846, 852. *See also Hensley v. Durrani,* 1st Dist. Hamilton No. C-130005, 2013-Ohio-4711, ¶ 14 (a trial court properly refuses to grant leave to amend when amendment would be futile).

Here, the Court should exercise its considerable discretion to deny Titan's motion for leave to amend its Complaint.  Even if Titan's request were deemed to be timely - despite being filed sixteen months after it filed its original Complaint and six months after the alleged new facts were discovered – and even if all of the facts alleged in the proposed Amended Complaint

4

were assumed to be true, the new claim that Titan seeks to assert is not supportable as a matter of law. The proposed amendment would therefore be futile, and leave to amend should be denied.

## III.   ARGUMENT OF LAW

### A.   Fraudulent Transfer

The proposed new substantive claim alleged in Titan's proposed First Amended Complaint is labeled, "Fraudulent Transfer/Veil Piercing." Although Titan cites no case or statute to articulate this claim in its motion for leave, a claim of fraudulent transfer is governed by Ohio's version of the Uniform Fraudulent Transfer Act, R.C. § 1336.01, *et seq.*

Titan's sole allegation or theory in support of this claim is that Vestige made two "transfers" in January 2012 and September 2012, respectively, "with actual intent to hinder, delay or defraud Titan." (*Proposed First Amended Complaint*, ¶¶ 32-33, 71; *Motion for Leave to File First Amended Complaint*, p. 3; Deposition of Matthew Lafkas ("Lafkas Dep."), pp. 30, 33, 202-03). Titan *does not* allege that Vestige made any transfer without receiving a reasonably equivalent value in exchange while insolvent or unable to meets its debts as they became due (R.C. §§ 1336.04(A)(2), 1336.05). Rather, Titan alleges only that the alleged "transfers" were made in violation of R.C. § 1336.04(A)(1), because they were allegedly made "[w]ith actual intent to hinder, delay or defraud any creditor" of Vestige.

### 1.   The "Transfer" to Commerce Bank Occurred Nine Months Before Titan's Alleged Claims Arose and Was Not Fraudulent.

The first "transfer" alleged in the proposed First Amended Complaint is the satisfaction by Vestige in January 2012 of Commerce Bank's mortgage loan on the property. (*Proposed First Amended Complaint*, ¶ 6; *Motion for Leave to File First Amended Complaint*, p. 3; Lafkas Dep., pp. 30, 33). Although it has not named Commerce Bank as a Defendant in the proposed

5

First Amended Complaint, Titan apparently seeks to set the January 2012 mortgage satisfaction

aside. This aspect of Titan's purported claim, however, fails as a matter of law.

The Act lists eleven factors or "badges of fraud" to be considered in determining actual

intent to hinder, delay or defraud a creditor under Section 1336.04(A)(1). Those factors are:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

R.C. § 1336.04(B); *Huntington Nat'l. Bank v. Winter*, 1st Dist. Hamilton No. C-090482, 2011-

Ohio-1751, ¶¶ 10-21. At least three of these "badges of fraud" should exist to support a finding

of fraudulent intent. *Winter*, 2011-Ohio-1751, ¶ 9.

Titan does not even mention *any* of these factors in its proposed First Amended

Complaint – let alone allege that any of them apply in this case. Moreover, it is clear that the

6

payoff of the Commerce Bank note and mortgage occurred in January 2012 – some nine months before Titan first asserted its alleged claim against Vestige by recording its mechanic's lien in October 2012.  There can be no possible suggestion that Commerce Bank is an "insider" of Vestige, that Titan had threatened Vestige with suit as of January 2012, that the payment to Commerce Bank represented substantially all of the assets of Vestige, that Vestige became insolvent by reason of the mortgage satisfaction, or that any of the other factors listed in Section 1336.04(B) apply here.

The proposed amendment of the Complaint to assert a claim of fraudulent transfer with respect to the January 2012 mortgage satisfaction to Commerce Bank would be a futile act, because the claim would immediately be subject to a Rule 12(B)(6) dismissal.  Accordingly, the proposed amendment should be denied.

> **2.     Skinner Family II, LLC, MRL Capital Holdings, LLC and Two Thirds, LLC are Not "Insiders" and Received No Fraudulent Transfers.**

The second "transfer" alleged in the proposed First Amended Complaint is the return of capital and distribution of profits by Vestige to its members, or owners, in September 2012. (*Proposed First Amended Complaint*, ¶ 33, *Motion for Leave to Amend*, p. 3, Lafkas Dep. at 202-03).  Titan seeks to join these members – Skinner Family II, LLC, MRL Capital Holdings, LLC and Two Thirds, LLC – as additional defendants, and to hold them liable as recipients of the alleged "fraudulent transfers." (*Proposed First Amended Complaint*, ¶ 73).

The only "badge of fraud" alleged by Titan in support of its claim against the members of Vestige is that they are "insiders of Lafkas and Vestige, as contemplated by the Ohio fraudulent conveyance statute." (*Proposed Amended Complaint*, ¶¶ 36, 73).  However, none of these proposed additional defendants can be an "insider" within the statutory definition of that term. An "insider," for purposes of the Act, is a party with a qualifying relationship with the debtor, if

7

the debtor is: (1) an individual; (2) a corporation; or (3) a partnership. R.C. § 1336.01(G)(1), (2), (3). An "insider" can also be an "affiliate" of the debtor (as defined in Section 1336.01(A)), or a managing agent of the debtor. R.C. § 1336.01(G)(4), (5)).

Vestige is a limited liability company, formed pursuant to R.C. Chapter 1705. (*Complaint*, ¶ 3). It is not an individual, a corporation, or a partnership. Further, neither Skinner Family II, LLC, MRL Capital Holdings, LLC nor Two Thirds, LLC are "affiliates" of Vestige, as defined by the Act, or managing agents of Vestige. Therefore, none of the definitions of "insider" provided in the Act apply to any of these entities. It is a cardinal rule of statutory construction that the court must look to the language of the statute itself to determine legislative intent. *State v. Jordan*, 89 Ohio St.3d 488, 491, 733 N.E.2d 601 (2000). If the meaning of the statute is unambiguous and definite, it must be applied as written without interpretation.[3] *Id.* at 492.

Here, no interpretation of R.C. § 1336.01(G) is required. Limited liability companies have existed in Ohio since July 1, 1994. *See* R.C. § 1705.01 (effective date). The legislature has not amended Section 1336.01 (itself effective since September 28, 1990) to expand the definition of "insider" to include members of a limited liability company for purposes of the Uniform Fraudulent Transfers Act. Titan's alleged claims against Skinner Family II, LLC, MRL Capital Holdings, LLC and Two Thirds, LLC, based solely upon its allegation that they are "insiders" of

---

[3] Even if Titan attempted to analogize Vestige to a corporation or to a partnership, its members are most akin to shareholders of a corporation or limited partners in a partnership – neither of which would qualify as an "insider" under Section 1336.01(G). *See* R.C. § 1705.01(G) (defining a "member" as an owner of a limited liability company; R.C. § 1782.19 (general partners, but not limited partners, participate in control of a partnership's business). As Titan itself alleges, these other entities were not controlling Vestige or acting as a general partner. *See Proposed First Amended Complaint*, ¶¶ 34-35, 75-76.

8

Vestige, would immediately be subject to dismissal under Rule 12(B)(6). Accordingly, the proposed amendment and joinder of these entities as defendants should be denied.

**B.**    **Veil Piercing**

Finally, embedded within Count IV of the Proposed First Amended Complaint is a claim that Mr. Lafkas should be held individually liable for the alleged fraudulent conveyances because he allegedly exercised complete control over Vestige in such a way as to harm Titan. (*Proposed Amended Complaint*, ¶¶ 75-77). As alleged in the Proposed Amended Complaint (¶¶ 3, 5, 7) and as Mr. Lafkas testified (Lafkas Dep., pp. 12-13), Mr. Lafkas is not personally a member of Vestige; rather, he is a member of MRL Capital Holdings, LLC, which entity itself is a member and 25% owner of Vestige. Therefore, in order to impose individual liability upon Mr. Lafkas, the Court would actually have to "pierce" two veils; *i.e.,* pierce Vestige's veil to get to MRL Capital, and then pierce MRL Capital's veil to get to Mr. Lafkas. This scenario is not even arguably supportable by the facts.

As a matter of statute, the "debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the limited liability company." R.C. § 1705.48(A). Further, "[n]either the members of the limited liability company nor any managers of the limited liability company . . . are personally liable to satisfy in any . . . manner, a debt, obligation, or liability of the company solely by reason of being a member or manager of the limited liability company." *Id.,* § 1705.48(B). *See also Art's Rental Equipment, Inc. v. Bear Creek Const., LLC*, Hamilton C.P. No. A0902785, 2012 Ohio Misc. LEXIS 21, * 4 (Feb. 23, 2012) (quoting *Tenable Protective Servs., Inc., v. Bit E-Technologies, LLC* (Ohio Ct. App. 8th Dist.), Case No. 89958, 2008-Ohio-4233 at ¶ 15).

9

To prevail on its claim against Mr. Lafkas, Titan would have to prove that: (1) MRL Capital had complete control over Vestige, such that Vestige had no separate mind, will or existence; (2) Mr. Lafkas had complete control over MRL Capital, such that MRL Capital had no separate mind, will or existence; (3) MRL Capital and Mr. Lafkas both exercised such control to commit fraud or other specific egregious acts of extreme shareholder misconduct against Titan and (4) Titan was injured by such control and wrong. *Dombroski v. Wellpoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶¶ 26-29, *Huttenbauer Land Co., LLC v. Harley Riley, Ltd.*, 1st Dist. No. C-110842, 2012-Ohio-4585, ¶¶ 16-17.

To establish the first element of "control" over the entity, courts consider factors such as grossly inadequate capitalization, failure to observe corporate formalities, insolvency at the time that the debt was incurred, shareholders holding themselves out as personally liable for corporate obligations, diversion of funds or property for personal use, absence of corporate records, and using the entity as a façade for the operations of the shareholder. *Art's Rental Equipment, Inc. v. Bear Creek Const., LLC*, Hamilton C.P. No. A0902785, 2012 Ohio Misc. LEXIS 21, * 4 (Feb. 23, 2012) (quoting *LeRoux's Billyle Supper Club v. Ma* (Ohio Ct. App. 6th Dist 1991), 77 Ohio App.3d 417, 422-23, 602 N.E.2d 685).

Titan does not even allege that *any* of these factors exist here with respect to Vestige or MRL Capital. Moreover, as discussed at length above, there are no facts that would support a finding that a fraud was committed as to Titan merely because Vestige paid off its mortgage debt and returned capital and profits to its members without any inkling of Titan's subsequent alleged claims. The mere allegation that Mr. Lafkas supposedly exercised complete control over Vestige would not withstand a motion to dismiss an *alter ego* claim against MRL Capital, let alone one against Mr. Lafkas individually. Moreover, there is not even a hint of a suggestion that Vestige

is insolvent or otherwise unable to satisfy a judgment that would theoretically be entered in favor of Titan on its substantive claims. "Veil piercing" simply is neither required nor or appropriate here.

For these reasons, Titan's motion to amend the Complaint to add Mr. Lafkas as a defendant and assert a "veil piercing" claim against him should be denied.

## IV.    CONCLUSION

It is clear that Titan has filed its motion for leave to amend as a smokescreen for the planned renewal of its request for the Cohen Brothers documents – a request that the Court has already denied once. The motion was filed in bad faith, and the proposed new claims have no factual or legal support whatsoever. Titan's Motion for Leave to File Its First Amended Complaint should be denied in all respects.

Respectfully submitted,

/s/ Steven C. Coffaro
Steven C. Coffaro (0065116)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Tel. (513) 579-6489
Fax: (513) 579-6457
steve.coffaro@kmklaw.com
Attorney for Defendant,
Vestige Redevelopment Group LLC

11

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served via email and regular U.S.

Mail this 19th day of June, 2015 to:

Ian H. Frank
Melissa A. Jones
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230

Larry Baron
Hamilton County Prosecutor's Office
230 East Ninth Street, Suite 4000
Cincinnati, Ohio  45202

/s/ Steven C. Coffaro
Steven C. Coffaro

6167336.1

12

**Donatella LukezBeatrice**

| | |
|---|---|
| **From:** | EfilingClerk@cms.hamilton-co.org |
| **Sent:** | Monday, June 22, 2015 8:52 AM |
| **To:** | Ian Frank; Donatella LukezBeatrice; Melissa Jones; Donatella LukezBeatrice |
| **Subject:** | Electronically Filed Document Received |

CHECKED
BY DOCKET
JUN 2 3 2015
M. LEBRON

You are receiving this notification as a courtesy from Tracy Winkler, Hamilton County Clerk of Courts, because a document was filed with the Clerks' Office and you are listed as an attorney of record on the following case:

Case Number: A 1400996
Case Caption: Titan Wrecking And Enviromental Llc vs. Vestige Redevelopment Group Llc Document Filed:
MEMORANDUM IN OPPOSITION TO PLAINTIFFS MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT INSTANTER

Date Filed: June 19, 2015
Filed By: Steven C Coffaro (Attorney for Defendant Vestige Redevelopment Group Llc)

If you believe you have received this e-mail in error, please call (513) 946-5699 or (513) 946-5612. Have the above information available to tell the employee at the Clerk of Courts office.

This message has been automatically generated by the electronic filing system of the Hamilton County Clerk of Courts.

1