IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TITAN WRECKING & ENVIRONMENTAL, LLC, | : : : | Case No. 1:15-cv-00577 |
| Plaintiff, | : : | Judge Susan J. Dlott |
| v. | : : | |
| VESTIGE REDEVELOPMENT GROUP LLC, *et al.*, | : : : | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TO STAY** |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion to Dismiss or to Stay. (Doc. 7.) Defendants contend that a parallel proceeding is pending between the parties in the Court of Common Pleas, Hamilton County, Ohio ("State Court Proceeding") and consequently seek dismissal of this civil action under the *Colorado River* abstention doctrine. In the alternative, Defendants ask the Court to exercise its inherent authority to stay this litigation until the State Court Proceeding concludes. Plaintiff has filed a memorandum in opposition (Doc. 14), to which Defendants have replied (Doc. 17). For the reasons that follow, Defendants' motion will be **DENIED**.

1

I.  **BACKGROUND**[1]

A. **State Court Proceeding**

On February 20, 2014, Titan Wrecking & Environmental, LLC ("Titan") filed a complaint in the Court of Common Pleas, Hamilton County, Ohio, naming, among others, Vestige Redevelopment Group LLC ("Vestige") as a defendant. (Complaint for Money Damages and Foreclosure, Doc. 8-1 (at Page ID 75–99).) Titan asserts claims against Vestige for breach of contract, unjust enrichment, and foreclosure of a mechanic's lien that Titan recorded against real estate owned by Vestige. (*Id.*) These claims arise from work perfomed by Titan, pursuant to a contract executed on October 25, 2011, with regard to the Former Kahn's/Sara Lee Building Demolition project (the "Project") located at 3241 Spring Grove Avenue in Cincinnati, Ohio. (*Id.* at ¶ 7 (at Page ID 76).) Titan alleges that it last performed labor and furnished materials for the Project on August 3, 2012 and that is owed an outstanding balance in excess of $885,584.55 for its services. (*Id.* at ¶¶ 22, 32 (at PageID 77, 78).) In response, Vestige filed not only an answer but also a counterclaim for slander of title and for a declaratory judgment that Titan has been paid in full and that its mechanic's lien is invalid. (Answer and Counterclaim, Doc. 8-1 (at PageID 100–13).)

Discovery ensued. General partner/manager Matthew R. Lafkas ("Lafkas") testified as Vestige's witness pursuant to Ohio R. Civ. P. 30(b)(6). (Lafkas Dep., Doc. 15-1 at PageID 285–86.) He acknowledged that he was the individual primarily responsible for the development and

---

[1] Certain background facts are drawn from pleadings filed in *Titan Wrecking & Environmental, LLC v. Vestige Redevelopment Group LLC, et al.*, No. A 1400996 (Hamilton Cnty., Ohio C.P.), copies of which are attached to the Declaration of Steven C. Coffaro, Esq. in Support of Defendants' Motion to Dismiss or to Stay (*see* Doc. 8) and the Declaration of Melissa A. Jones, Esq. in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss or Stay (*see* Doc. 14-2). This Court properly takes judicial notice of the Hamilton County docket, inasmuch as state court proceedings, which are a matter of public record, meet the criteria found in Fed. R. Evid. 201(b)(2).
   Otherwise, the Court cites to the portion of the record providing support for the statement.

funding of the Project on behalf of Vestige, as well for the day-to-day management of it. (*Id.* at PageID 288.)

Part of Titan's "demolition" work was to salvage and segregate certain types of materials so that Vestige eventually could sell these materials as scrap. (*Id.* at PageID 294.) When deposed, Lafkas refused to disclose the amount of revenue received from the production and sale of scrap metal to a third-party, Cohen Brothers, Inc. (*Id.* at PageID 291, 333.)[2] But without reference to particular amounts, he confirmed that, in January 2012, Vestige used a portion of the Cohen Brothers scrap proceeds to pay off a $480,000 loan from Commerce Bank that partially financed the Project.[3] (*Id.* at PageID 288–89, 291.) Lafkas also confirmed that Vestige made a return of capital and a distribution of profits to its members in September 2012. (*Id.* at PageID 334.)

Although mum on the subject of scrap proceeds, Lafkas advised that Vestige, an LLC itself, is owned by three other LLCs: Skinner Family II (25%), MRL Capital Holdings (25%), and Two Thirds (50%). (*Id.* at Page ID 286–87.) Lafkas is a member of Skinner Family II, but not its general partner/manager. Rather, his parents serve in that capacity. The other members of Skinner Family II are his four siblings. (*Id.* at PageID 286.) Lafkas is the sole member of MRL. (*Id.*) John Nire is the general partner/manager of Two Thirds, and Tom Nire, Sr. is its other member.[4] (*Id.*)

---

[2] Vestige moved for a protective order relative to Titan's subpoena to Cohen Brothers, Inc. for this information, which Titan opposed. (*See* Jones Decl., Doc. 14-2 at ¶ 2 (at PageID 263) & Case History entries dated 12/4/2014, 12/15/2014, and 12/26/2014, Doc. 14-3 at PageID 265–66.) The Magistrate's Decision granting Vestige's motion (*see* Doc. 8-3 at PageID 114–18), to which Titan objected, remains before Common Pleas Judge Beth A. Myers (*see* Case History entries dated 1/30/2015, 2/13/2015, 2/23/2015, 4/28/2015, and 4/29/2015, Doc. 14-3 at PageID 265–66).

[3] The Project also was funded with grants from the State of Ohio's Department of Development and the City of Cincinnati. (Lafkas Dep., Doc. 15-1 at PageID 292.)

[4] It is unclear whether the Messrs. Nire are related—by blood or otherwise—to the Lafkas family. (*See* Lafkas Dep., Doc. 15-1 at PageID 286, 288.)

Upon learning of these intertwined relationships, on June 4, 2015 Titan filed a motion for leave to file an amended complaint for the purpose of adding a fraudulent transfer/veil piercing claim against Lafkas and Vestige (and its member LLCs). (*See* Case History entry dated 6/4/2015, Doc. 14-3 at PageID 265 & First Amended Complaint, Doc. 8-4 at PageID 138–151.) Overall, it proposed to allege that Lafkas and Vestige, with knowledge of Titan's valid extra cost claims, fraudulently transferred the revenue received from the sale of scrap metal to evade paying Titan. (First Amended Complaint, Doc. 8-4 at ¶¶ 69–77 (at PageID 147–48).)

The "extra cost claims" are linked with a change order negotiated by Vestige and Titan in the wake of encountering building materials contaminated by asbestos or suspect asbestos ("Change Order #2"). (*Id.* at ¶ 18 (at PageID 141).)[5] Different—and more expensive—means and methods for demolition and disposal of these materials became necessary. (*Id.*) Change Order #2 contained an agreed unit price for new backfill to replace the existing backfill expected to be contaminated by asbestos by virtue of the demolition process, but it did not include a final cost. (*Id.* at ¶¶ 20–21 (at PageID 141).) Titan proposed to allege that Vestige knew that the work described in Change Order #2 would require Titan "to import replacement backfill of an undetermined/unknown quantity until that work was completed, and Vestige authorized Titan to import the replacement backfill." (*Id.* at ¶ 22 (at PageID 141).) In reliance on this authorization, Titan imported the replacement backfill and expected that a subsequent change order would be issued to pay for the final cost, at the previously agreed unit price, once the work was completed and thus the quantity known. (*Id.* at ¶¶ 23–24 (at PageID 142).) Titan also expected that Vestige would pay this cost from the "significant revenue" it received from the sale of scrap to Cohen Brothers. (*Id.* at ¶¶ 26, 30 (at PageID 142).) Titan proposed to allege, "based on its past experience in performing demolition services and salvaging similar materials for sale[,]" that

---

[5] No other change orders are in dispute.

Vestige likely received revenue "equal to or in excess of at least $1 million to $2 million." (*Id.* at ¶¶ 28–29 (at PageID 142 ).) But instead, Lafkas— in his exercise of control over Vestige— used the revenue "to distribute profits and issue capital returns to its members (including Lafkas), to prematurely satisfy the Commerce Bank loan, and/or to reduce the amount of available Project grant funds from which Vestige paid, or could pay, Titan." (*See id.* at ¶ 35 (at PageID 143)).)

Vestige opposed Titan's motion for leave to amend. (*See* Case History entry dated 6/19/2015, Doc. 14-3 at PageID 265 & Memorandum in Opposition to Plaintiff's Motion for Leave to File First Amended Complaint *Instanter,* Doc. 14-4 at PageID 268–81.) In a decision rendered on August 11, 2015, the Magistrate denied Titan's motion as untimely and as prejudicial to Vestige because the proposed new claim would "fundamentally change the nature of th[e] action." (*See* Magistrate's Decision, Doc. 8-5 at PageID 152–154.) This decision was adopted by Common Pleas Judge Beth A. Myers on September 29, 2015, who noted that "[t]he objection period has expired with no objections having been filed and no extensions having been granted." (*See* Entry Adopting Magistrate's Decision, Doc. 8-6 at PageID 155.)

**B. The Instant Action**

Meanwhile, on September 8, 2015, after the Magistrate rendered his decision but before Judge Myers adopted it as her own, Titan filed the instant lawsuit seeking damages and remedies for fraudulent transfers in violation of Ohio Rev. Code § 1336.01 *et seq.* (Ohio Uniform Fraudulent Transfer Act) and for a declaratory judgment regarding Titan's rights thereto. (Doc. 1.)[6] Named as Defendants are Vestige and its member LLCs (Skinner Family II, MRL Capital Holdings, and Two Thirds), as well as Matthew R. Lafkas individually. (*Id.*) This civil action is identical to the claim that Titan ultimately was denied leave to add in the State Court Proceeding,

---

[6] Titan alleges subject-matter jurisdiction based on diversity. (Doc. 1 at ¶ 10 (at PageID 3).)

5

save for the amount and type of damages and additional remedies sought. (*Cf.* Doc. 1 at ¶¶ 44, 49, 50 (at PageID 8–9) *with* Doc. 8-4 at ¶¶ 72, 77 (at PageID 148).) In lieu of an answer, Defendants filed the instant motion, which is fully briefed and ripe for adjudication.

## II. ANALYSIS

### A. Dismissal or Stay under *Colorado River*

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). And "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). Rather, the Court considers a number of factors that must be weighed and balanced carefully against each other on a case-by-case basis: (1) whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Romine v. Compuserve Corp.*, 160 F.3d 337, 340–41 (6th Cir. 1998) (citations omitted). As a threshold inquiry, however, the Court first must determine "whether the concurrent state and federal actions are actually parallel." *Id.* at 339 (citing *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984)). If not, the analysis ends, because "the district court would have nothing in favor of which to abstain." *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 571 (6th Cir. 1994) (citing *Crawley*).

Actions are parallel when there is an identity of parties and issues in the federal and state court actions. *Id.* at 572. "Exact" parallelism is not essential—instead, the two proceedings must be "substantially similar." *Romine*, 160 F.3d at 340 (quoting *Nakash v. Marciano*, 882 F.2d 1141, 1146 (9th Cir. 1989).) Here, both actions clearly possess the required identity of parties. What they lack, however, is the necessary identity of issues.

Titan is the sole plaintiff in both actions. Vestige is a common defendant to both, and the additional federal defendants are all owners of Vestige. Without question, their interests are "wholly aligned" with Vestige. *See Healthcare Capital, LLC v. Healthmed, Inc.*, 213 F. Supp. 2d 850, 858 (S.D. Ohio 2002) (Marbley, J.).

While it is true that the claims in both actions "arise out of the same nucleus of operative facts[,]" they fall short of being "inextricably intertwined[.]" *Id.* "Essential to the determination of whether the two actions are parallel is whether resolution of the state court action will provide *complete relief* for the federal action." *Id.* at 857 (emphasis added) (citing *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990)). Unfortunately for Defendants, it will not.

In the State Court Proceeding, Titan claims that Vestige still owes it money for work done on the Project. It asks the court to award compensatory damages in its favor and against Vestige. It asks also for a declaratory judgment that validates the mechanic's lien it recorded against the Project real estate, a prerequisite to foreclosure. Vestige, on the other hand, claims that it has paid Titan in full. Thus, it seeks in counterclaim a declaratory judgment that Titan's mechanic's lien is invalid. If Vestige rather than Titan were to prevail on the issue of indebtedness, then, in the federal action, Titan would be collaterally estopped from claiming it is a "creditor"[7] that can sue Vestige under the Fraudulent Transfer Act. *See Stotts v. Pierson*, 976 F. Supp. 2d 948, 961 (S.D. Ohio 2013) (Marbley, J.) (applying *Fort Frye Teachers Ass'n v. State*

---

[7] *See* Ohio Rev. Code § 1336.01(D).

7

*Emp't Relations Bd.*, 81 Ohio St. 3d 392, 692 N.E. 2d 140 (1998)). But if *Titan* were to prevail in the State Court Proceeding, then the federal action obviously can continue. *Blood v. Nofzinger,* 162 Ohio App. 3d 545, 2005-Ohio-3859, 834 N.E.2d 358, ¶ 22 ("Litigation that resulted in a judgment and created a judgment-creditor/judgment-debtor relationship is not *res judicata* as to a subsequent claim that the debtor fraudulently transferred property to avoid paying the judgment.") Moreover, the federal action can advance even if the money judgment is satisfied by the proceeds from a sheriff's sale of the Project real estate or otherwise. *Id.* at ¶¶ 59, 60. Clearly, the requisite identity of issues is missing.

Having determined that the concurrent federal and state actions are not parallel, we need not analyze the *Colorado River* factors. In this regard, however, the Court notes that the sixth factor would weigh very heavily *against* abstention, inasmuch as it would deprive Titan of any forum in which to litigate its fraudulent transfer claim. Titan sought to make this claim a part of the State Court Proceedings, but Vestige objected. Thereafter, the Magistrate concluded that Titan's proposed amendment would "fundamentally change the nature of this [mechanic's lien case]." (*See* Magistrate's Decision, Doc. 8-5 at PageID 153.) As Titan aptly observes, Defendants are not entitled to use this ruling as both a shield and a sword. *See generally Wimmer v. Gateway Funding Diversified Mortg. Servs., L.P.*, No. 1:15-cv-241, 2015 WL 5453058, at *6 (S.D. Ohio Sept. 17, 2015) (federal case will not be stayed when state court stayed case upon defense representation that it planned to remove state case and consolidate it with pending federal case).

Because Defendants have failed to satisfy the threshold identity of issues inquiry, their motion to dismiss or to stay based on the *Colorado River* abstention doctrine must be denied.

**B. Stay under *Landis***

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.,* 299 U.S. 248, 254–55 (1936) (citations omitted); *Canter v. Calderhead, Lockemeyer & Peschke Law Office*, No. 1:13-cv-514, 2014 WL 64155, at *1 (S.D. Ohio Jan. 8, 2014) (quoting *Landis* and recommending a stay) (Litkovitz, M.J.), *adopted sub nom. Muench v. Calderhead, Lockemeyer & Peschke Law Office*, Nos. C-1-13-514, C-1-13-573, 2014 WL 1512504 (S.D. Ohio Apr. 16, 2014) (Weber, J.). In deciding whether a stay is appropriate, a court should consider the following factors: (1) the dispositive effect of another case; (2) whether judicial economy will be served; (3) whether the public welfare will be served; and (4) any prejudice or hardship to the party opposing the stay, given its length. *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (citing *Landis*). On balance, this Court concludes that a *Landis* stay is not appropriate.

As discussed earlier, if Vestige prevails on the issue of indebtedness, then Titan would be collaterally estopped from re-litigating its status as "creditor" in the federal action, thus ending any controversy. But a controversy remains if *Titan* were to prevail. This factor, then, is somewhat of a wash. Defendants represent that the State Court Proceeding is set for a bench trial on May 9, 2016. (*See* Defendants' Reply in Support of their Motion to Dismiss or to Stay, Doc. 17 at PageID 387.) At first blush, this relatively short time span weighs in favor of a stay with respect to the remaining factors. Yet, as Defendants represented at the Preliminary Pretrial Conference held earlier today, the case will first be presented to the Magistrate, and it is unlikely he will rule from the bench. Moreover, the parties will be entitled to object to his written

9

findings of fact and conclusions of law once—and whenever—they issue.  Furthermore, however Judge Myers rules, the losing party is entitled to an appeal of right, a scenario likely considering the very ardent advocacy this Court has witnessed.  Hence, as a practical matter, a stay of any limited duration would serve no purpose.  Accordingly, Defendants' alternative motion for a stay, therefore, also will be denied.

### III. CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss or to Stay (Doc. 7) is hereby **DENIED**.

**IT IS SO ORDERED**.

Dated: _____            S/Susan J. Dlott_____
                             Judge Susan J. Dlott
                             United States District Court